

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1184-16

### RICHARD CHARLES OWINGS, JR., Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

**YEARY, J., filed a concurring opinion.**

### <u>CONCURRING OPINION</u>

The Court today holds that the trial court's error in failing to grant Appellant's request

to force the State to elect which particular act of sexual assault it would rely upon to prove

the charge against him was harmless. In so holding, the Court employs the standard for

determining whether trial error is harmful contained in Rule 44.2(a) of the Rules of Appellate

Procedure. TEX. R. APP. P. 44.2(a). This is the rule that governs errors of constitutional

dimension, which mirrors the standard the United States Supreme Court has mandated for

errors of federal constitutional dimension, in *Chapman v. California*, 386 U.S. 18 (1967).

That is the test this Court deemed in *Phillips v. State*, 193 S.W.3d 904, 913-14 (Tex. Crim. App. 2006), and *Dixon v. State*, 201 S.W.3d 731, 734 (Tex. Crim. App. 2006), to be appropriate for judging the harm inflicted by election errors. Although this may not be the case in which to revisit *Phillips*, I write to suggest that, on some future occasion, the Court should take a second look to determine whether it might be more appropriate to apply the standard for harm governing non-constitutional errors in this context.

*Phillips* first declared election error to be of constitutional dimension based upon two considerations: 1) its bearing on a defendant's state constitutional right to a unanimous jury verdict; and 2) its notice implications. 193 S.W.3d at 913-14. Neither of these considerations ultimately convinces me that election error itself directly violates any constitutional provision.

With respect to jury unanimity, we have made it clear since *Phillips* that a defendant is entitled to a jury instruction, and the trial court is "obligated" to give it, requiring the jury to agree on a particular act that satisfies the charging instrument before it may convict him—regardless of whether he has requested that the State be forced to elect at the close of its case-in-chief. *Cosio v. State*, 353 S.W.3d 766, 776 (Tex. Crim. App. 2011).[1] Given that he can insist on a jury instruction to preserve his right to a unanimous verdict, a defendant

[1] The trial court also failed in this case to give a jury instruction that would have required the jury to agree to a particular incident upon which to convict. But Appellant neither objected to the jury charge on this account, nor complained of the omission on appeal. *Owings v. State*, 507 S.W.3d 294, 296 (Tex. App.—Houston [1st Dist.] 2016). Thus, *that* constitutional issue is not before us.

is able to opt for an election—or not—purely as a matter of strategy. *Id*. He can ask for an election and thereby force the State to select the incident it thinks best satisfies the "on or about" allegation in the indictment. In doing so, however, the defendant forfeits his right to the protection of the Double Jeopardy Clause to insulate him from prosecution for any of the other incidents the State has proven during its case-in-chief. Alternatively, he can choose *not* to insist on an election, choose to defend himself as best he can against *all* of the incidents that might serve to satisfy the "on or about" charge against him, leave it to the jury to select whichever incident, if any, it thinks best satisfies the charge in keeping with the trial court's jury unanimity instruction, and later invoke the double jeopardy protection against further prosecution for any of those incidents. *See Bonilla v. State*, 452 S.W.3d 811, 831-33 (Tex. Crim. App. 2014) (Price, J., dissenting) (explaining the strategy considerations that underlie the defendant's decision whether to force the State to elect). When the decision whether to force an election is so much a matter of trial strategy, and the right to a jury-unanimity instruction remains inviolate regardless of which course a defendant chooses, it is hard to credit *Phillips*'s conclusion that election error *itself* is of constitutional dimension.

Nor does the election option necessarily implicate notice so substantially as to invoke principles of due process or due course of law, as *Phillips* somewhat summarily concluded. 193 S.W.3d at 913-14. Notice is ordinarily a question of what a defendant knows his exposure will be *before* trial commences, and in Texas it usually comes from the charging

instrument. *See* George E. Dix & John M. Schmolesky, 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 25:123, at 199 (3d ed. 2011) ("Whether a charging instrument provides sufficient specificity to give the accused the trial preparation notice to which he is entitled must be determined from the fact of the charging instrument. * * * The rationale for this . . . seems to be based in part on the proposition that notice must be provided by the charging instrument itself."). Defendants are presumed to know that an indictment alleging they committed an offense "on or about" a particular date will support a conviction for any commission of the alleged offense occurring anterior to the indictment and within the applicable period of limitations. *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). We have held that this lack of specificity in the date of the offense does not cause a charging instrument to fail to meet the notice requirements of Article I, Section 10, of the Texas Constitution. *Garcia v. State*, 981 S.W.2d 683, 685-86 (Tex. Crim. App. 1998); TEX. CONST. art. 1, §10. When the State proves more than one commission of the offense that will satisfy its pleading, all occurring within the limitations period, the law permits the State—and a defendant is presumably *aware* that the law permits the State—to select the instance of commission of the offense to submit to the jury as proof of the charged offense.[2] The defendant knows before trial has even begun that he has the option either: 1) to force an election, and thereby avoid having to defend against conviction for *every* act the State has

---

[2] Every other incident the State has proved is then rendered essentially an "extraneous offense," subject to the circumscriptions and limiting instructions accorded by law.

proven in satisfaction of the indictment; or 2) to attempt to defend against each potential act of commission of the offense the State may prove, but later invoke double jeopardy should the State ever attempt to retry him for any of those incidents.

Certainly, when the defendant requests an appropriate election, but the trial court denies it, it is plainly error insofar as it deprives the defendant of this legitimate choice. *O'Neal v. State*, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988) ("[O]nce the State rests its case in chief, in the face of a timely request by the defendant, the trial court *must* force the State to make its election. Failure to do so constitutes error."); *Crosslin v. State*, 235 S.W. 905, 906 (Tex. Crim. App. 1921) (same). And he may, if his strategic preference was to force an election, be compelled unexpectedly to defend against *all* of the incidents the State can marshal in support of its pleading, instead of only one as was his preference. He may even be forced to request a continuance in order to prepare to defend against those incidents he had assumed he would *not* have had to refute (but for the trial court's failure to grant his request to force the State to elect). He may then complain on appeal of both the trial court's failure to force the election *and* its failure to grant a continuance. But neither of these appellate claims seems necessarily to derive from constitutional due process or due course of law principles. *See Garcia*, 981 S.W.2d at 686 (defendant who is surprised by State's evidence in satisfaction of its "on or about" allegation should ask for a postponement, but the notice provision of Article I, § 10, is not implicated). Of course, the defendant knew from

the outset that the trial court *might* deny his request for an election, however erroneously. It is difficult to see how, at least as a matter of constitutional *notice*, he has been kept in the dark. In my view, we may have been too hasty in *Phillips* to identify a constitutional notice dimension to election error.[3]

If I am right, then election error of the sort involved in this case should be measured for harm against the standard that appears in Rule 44.2(b), which is the standard for non-constitutional error, rather than Rule 44.2(a), which governs constitutional errors. TEX. R. APP. P. 44.2(a) & (b). We should be asking whether we should disregard the trial court's failure to grant Appellant's request to force the State to elect in this case because it did not "affect substantial rights." To be sure, if we can say beyond a reasonable doubt, as the Court does today, that the error did not contribute to Appellant's conviction, then we can also say that it could not in any way have affected his substantial rights. Thus, it does not matter in the present case which harm standard we employ, and because the parties were not asked to brief the question of whether we should adhere to *Phillips*'s adoption of the constitutional harm standard, this may not ultimately be the case for resolving that question.

With these remarks, I concur in the result.

FILED:       November 1, 2017
PUBLISH

---

[3] This is not to say that a failure to give a jury instruction requiring unanimity would not constitute error of constitutional dimension. *See* note 1, *ante*; *Cosio v. State*, 353 S.W.3d at 776.